SUCESIÓN CHAVIER *v.* EL MUNICIPIO DE ADJUNTAS.

APELACIÓN procedente de la Corte de Distrito de Ponce.

No. 140.—Resuelto en diciembre 20, 1907.

ALEGACIONES—EXCEPCIÓN PREVIA—CAUSA DE ACCIÓN—REIVINDICACIÓN.—En la demanda presentada en este caso se alega que los demandantes adquirieron el inmueble de que forma parte un terreno que reclaman, por adjudicación en pago de crédito hipotecario; que fueron puestos en posesión del inmueble y que la corporación demandada ha ocupado y destinado á cementerio público, contra la voluntad de los dueños y sin compensación alguna, una parcela de terreno correspondiente al inmueble adjudicado. *Se resolvió:* Que esos

hechos son determinantes de la acción ejercitada, que es la reivindicatoria, pues se alega el *título* del demandante y la *posesión* del demandado.

Ejecución de Hipoteca—Venta de los Bienes Hipotecados—Escritura de Adjudicación.—Verificada la subasta de unos bienes hipotecados, ante la corte de distrito, con arreglo á la ley vigente antes de la promulgación del Código de Enjuiciamiento Civil actualmente en vigor, sólo dicha corte tiene facultades para otorgar la escritura de venta ó adjudicación de dichos bienes, sin que puedan tener aplicación á este caso especial las disposiciones del artículo 259 de dicho Código, ya vigente en la fecha de dicho otorgamiento por no haber verificado el Marshal la subasta de los bienes, ni tener capacidad para otorgar su adjudicación.

Pruebas—Documento Público.—La certificación del notario autorizante de la copia de una escritura, al efecto de que dicha copia concuerda fielmente con la escritura original obrante en su oficio, es suficiente para estimar probado el registro público del documento de que se trate.

Id.—Presunción con Respecto al Uso de un Terreno para Cementerio.—No habiéndose alegado, ni probado, que el terreno que reclama como suyo la parte demandante en este caso, estuviera destinado á cementerio durante cinco años con el consentimiento del dueño, huelga invocar la presunción establecida en el No. 37 del artículo 102 de la Ley de Evidencia.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Boerman.*

Abogados del apelado: *Sres. Tord, Toro y Canales.*

El Juez Asociado Sr. Hernández, emitió la opinión del tribunal.

En siete de noviembre de 1906, la Sucesión de Arístides Chavier y Chardón produjo ante la Corte de Distrito del Distrito Judicial de Ponce, contra el municipio de Adjuntas, una demanda que á la letra, dice así:

"La Sucesión de Don Arístides Chavier y Chardón compuesta de su viuda Doña Rosário Ramos y Gómez y de sus hijos Don Juan Alfredo, Doña Lorenza Amanda, Doña Rosario América, Don Luis Alcides, Doña Matilde Adelina y Doña Aida Mercedes Chavier y Ramos, por medio de sus abogados Tord, Toro & Canales, establecen la presente demanda contra el municipio de Adjuntas representado por su Alcalde Don Américo Rodríguez, alegando:

"Primero. Que por escritura que bajo el número 32 se otorgó ante el notario de Ponce, Don Gustavo Rodríguez, con fecha 28 de septiembre de 1904, Don José Tous y Soto, juez en aquella fecha de la Corte de Distrito de Ponce, asumiendo *ex-offitio* la representación de Don Juan Evaristo Tacoronte y Quintana, y la de la sociedad anó-

nima "La Unión Agrícola," adjudicó á favor de la Sucesión de Don Arístides Chavier, compuesta de las personas antes citadas, y en pago de un crédito hipotecario, el inmueble que se pasa á describir.

"Estancia de café denominada "Buena Vista," situada en el barrio de Garzas, término municipal de 'Adjuntas, con cabida de ciento noventa y ocho cuerdas y cinco centésimas de otra, equivalentes á 78 hectáreas, 6 áreas y 75 centiáreas, de las cuales hay 170 cuerdas fincadas de café y plátanos, y el resto de pastos, con algunas malezas, conteniendo un almacén de madera cobijado de yaguas para depositar frutos, casa de madera con máquina para descascarar café, la cual funciona por medio de fuerza animal y un glasis de mampostería para secar café; y colindando por el norte, con tierras de Don Antonio de Jesús; por el este, con el río y terrenos de Ramón Figueroa, antes de Don José Zayas; por el sud, con otros del mismo Figueroa, que fueron del referido Zayas y tierras de Don Antonio Tacoronte; y por el oeste, con terrenos de José Batista, hoy de su Sucesión, los de Marcelino García y Don Diego Batis y á Don Martín Torres."

"Segundo. Los demandantes recibieron por medio de la corte del distrito la posesión de la finca que se acaba de describir.

"Tercero. Que la corporación demandada ha ocupado y destinado á cementerio público cuatro cuerdas de las ciento noventa y ocho con cinco centésimas que se han descrito, contra la voluntad de los dueños y sin haberles pagado cantidad alguna por tal detención y ocupación.

"Cuarto. Que las cuatro cuerdas de terreno de referencia tienen un valor de seiscientos dollars y se hallan bajo las siguientes colindancias: Al norte, con una quebrada, que las separa de la propiedad de Don Antonio Conde; al saliente, con la carretera que conduce de Adjuntas á Utuado; y al sud y poniente, con el resto de la finca propiedad de los demandantes.

"Por todo ello, suplicamos á la honorable corte que se sirva dictar sentencia reconociendo el dominio á favor de los demandantes de las cuatro cuerdas que se dejan descritas en el hecho último de esta demanda, y condenando á la corporación demandada á dejar á la libre disposición de los demandantes dichas cuatro cuerdas de terreno; y para el caso de que la honorable corte entendiese, que por el uso á que han sido destinadas no puede aquella parcela de terreno volver á la posesión de los demandantes, sírvase la corte dictar una sentencia condenando al municipio de Adjuntas al pago de la suma de seiscientos dollars previo el otorgamiento de una escritura por parte de los demandantes, trasmitiendo el dominio de dicha parcela de terreno á

favor del ayuntamiento de Adjuntas, lo que los demandantes ofrecen desde luego hacer; y condenando también á la Corporación demandada al pago de las costas.—Tord, Toro y Canales, Abogados de los demandantes.''

A dicha demanda opuso la parte demandada excepciones previas, en la forma siguiente:

''Ante el honorable juez de la corte, comparece el municipio demandado, por medio de sus Abogados Boerman & Llorens, formulando excepciones previas á la demanda, y, como fundamentos de las mismas, alega:

''I. Que la demanda no contiene hechos suficientes para constituir ó determinar una causa de acción;

''II. Y que la demanda es ambigua, ininteligible y dudosa.

''Porque, aun suponiendo ciertos los hechos de la demanda, de ellos mismos se desprende que no puede prosperar la acción ejercitada.

''Suplicamos á la corte que en su día se sirva declarar con lugar estas excepciones, con todos los pronunciamientos legales, é imponer á los demandantes las costas de este pleito.

''Justicia que pedimos en Ponce á 14 de noviembre de 1906.— Respetuosamente, Boerman & Llorens, Abogados del Municipio de Adjuntas.''

La corte de Ponce, por resolución de 14 de enero del corriente año, declaró sin lugar las excepciones propuestas, concediendo á la parte demandada diez días para registrar su contestación, y dentro de ese término el municipio de Adjuntas contestó la demanda, negando totalmente las alegaciones contenidas en ella, con súplica de que se declarara sin lugar y se impusieran las costas al demandante.

Señalado día para la celebración del juicio, terminó éste por sentencia que fué pronunciada y registrada en 13 de abril último, y por ella declarada con lugar la demanda y condenado el municipio de Adjuntas á pagar á la Sucesión de Arístides Chavier la suma de seiscientos dollars, como precio de la parcela de terreno de que trata la demanda, debiendo la parte demandante, al percibir dicha suma, otorgar la correspon-

diente escritura al demandado, y pudiendo expedirse orden de ejecución para hacer efectiva la sentencia y por las costas y desembolsos en que la demandante haya incurrido·con motivo del ejercicio de su acción.

Contra esa sentencia interpuso el municipio de Adjuntas, cinco días después, recurso de apelación para ante esta Corte Suprema, á la que ha venido el correspondiente récord con pliego de excepciones, aceptado por ambas partes y aprobado por el juez.

Según el referido pliego, las excepciones tomadas durante el juicio por el abogado de la parte demandada fueron dos, á saber:

1ª. Que habiéndose presentado por los demandantes como única prueba para justificar el dominio de los terrenos que reclaman una copia de escritura pública, el demandado se opuso á que se admitiera, por haberla otorgado personas sin mandato ni facultad legal para ello, y por no estar debidamente inscrita, no obstante lo cual fué admitido dicho documento como prueba, tomándose excepción de tal resolución.

2ª. Que después de presentada y practicada toda la prueba del demandante para acreditar el dominio é identidad de la finca y el valor de la misma, solicitó el demandado una orden que declarara desistida ó abandonada la demanda, por cuanto la única prueba presentada para acreditar el dominio del inmueble litigioso, ó sea la escritura de referencia, no era suficiente al fin apetecido, cuya moción fué desestimada, tomándose excepción también de tal resolución.

La parte apelante en su alegato ante esta Corte Suprema, sostiene, tanto las excepciones previas opuestas á la demanda, como las otras dos tomadas durante la celebración del juicio; y por virtud de ellas, solicita la revocación de la sentencia apelada con las costas á los recurridos.

La excepción previa opuesta á la demanda de que ésta no contiene hechos suficientes para determinar una causa de acción, es improcedente, pues suplican que por sentencia sea

reconocido á su favor el dominio de las cuatro cuerdas de terreno que describen, y para ello alegan que adquirieron el inmueble ó estancia de que forma parte dicho terreno mediante escritura pública de adjudicación en pago de crédito hipotecario, otorgada con fecha 28 de septiembre de 1904; que fueron puestos en posesión del inmueble, y que la corporación demandada ha ocupado y destinado á cementerio público, contra la voluntad de los dueños y sin retribución alguna, cuatro cuerdas del terreno adjudicado.   Esos hechos determinan indudablemente una causa de acción para reclamar la reivindicación de un terreno de que son dueños los demandantes y del que fueron desposeídos sin razón ó derecho por el demandado. La sección 2182 del tomo 2°. de la obra de derecho titulada ''Estee's Pleadings,'' dice: Que en una acción reivindicatoria, los hechos que el demandante ha de alegar como esenciales, son: Primero, el título del demandante; y segundo, la posesion del demandado.'' Con ambos requisitos ha cumplido la Sucesión de Arístides Chavier.

Tampoco puede admitirse que la demanda sea ambigua, ininteligible y dudosa, pues sus términos son claros, y cualquier persona, aunque no esté versada en el estudio del derecho, puede entenderla á su simple lectura.

Examinemos ahora la primera de las excepciones tomadas en el juicio.   Sostiene la parte apelante que la escritura de adjudicación presentada por la parte demandante como evidencia para probar el dominio, es una escritura nula, pues la venta judicial á que se refiere aparece otorgada por el juez de la corte de Ponce, Don José Tous Soto, con fecha 28 de septiembre de mil novecientos cuatro, obrando en representación de los dueños de la finca litigiosa, llamados Juan E. Tacoronte y ''La Union Agrícola,'' sin que tuviera la representación legal ni consensual de los expresados vendedores, toda vez que en la expresada fecha regían ya el actual Código de Enjuiciamiento Civil y la Ley creando el cargo de marshal del

distrito y definiendo sus deberes, aprobada en 1º. de marzo del citado año 1904.

Para apreciar el valor de semejante alegación, necesario se hace consignar algunos antecedentes de la escritura de que se trata, según resultan de la misma.

Juan Evaristo Tacoronte y Quintana, según escritura de 17 de marzo de 1898, debía á Arístides Chavier y Chardón siete mil pesos provinciales, equivalentes á cuatro mil doscientos dollars, que se obligó á pagar en tres plazos, constituyendo para seguridad del crédito hipoteca á favor del acreedor sobre la estancia descrita en el hecho primero de la demanda. La deuda quedó reducida á tres mil setecientos noventa y cinco dollars; y habiendo fallecido Chavier, se adjudicó el crédito en distintas proporciones á la viuda é hijos del mismo, hoy los demandantes. Por escritura de veinte y uno de octubre de mil novecientos tres, Tacoronte segregó de la finca hipotecada ciento noventa y tres cuerdas, que aportó á la Sociedad Anónima "Union Agrícola," reservándose cinco cuerdas y cinco céntimos del total de la primitiva finca. Con fecha siete de noviembre de mil novecientos tres, los acreedores iniciaron ante la corte de Ponce el procedimiento sumario especial de la Ley Hipotecaria contra Juan Evaristo Tacoronte y "La Unión Agrícola," para el cobro del crédito hipotecario en la parte pendiente de pago. Por auto de 18 de febrero de 1904, se ordenó la subasta de la finca hipotecada, señalándose para el remate el día veinte y cinco de marzo siguiente, sin que tuviera efecto por falta de licitadores, como tampoco lo tuvieron la 2ª. y 3ª. subasta anunciadas para los días doce de mayo y veinte de junio del propio año 1904. En veinte y tres del citado junio los ejecutantes ofrecieron por la finca la suma de tres mil setecientos noventa y cinco dollars á que ascendía su reclamación, y notificada esa oferta á Tacoronte y á "La Unión Agrícola," en treinta del mismo junio y en diez y ocho de agosto, previniéndoles que dentro de nueve

días podían librar el inmueble, pagando á los acreedores ó presentando persona que mejorase dicha oferta después de transcurrido el término señalado, pidieron se les adjudicara por el precio ofrecido en la parte proporcional á su respectiva participación en la totalidad del crédito reclamado, y entonces, la corte, por auto de diez y nueve de septiembre, otorgó la adjudicación pedida y ordenó el otorgamiento de la correspondiente escritura y que se expidiera mandamiento al marshal para que pusiera á los adjudicatarios en posesión de la finca, habiendo en cumplimiento de dicho auto, otorgado de oficio el juez de la corte de Ponce, Don José Tous Soto, en nombre de los deudores "Unión Agrícola" y Juan Evaristo Tacoronte, á favor de los acreedores representados por su abogado Don Julio M. Padilla, la escritura de adjudicación de veinte y ocho de septiembre de mil novecientos cuatro, á cuya admisión en el juicio, como prueba, se opuso el ayuntamiento de Adjuntas.

Como se vé por los antecedentes expuestos, no había términos hábiles para que las subastas de la finca hipotecada se verificaran por el marshal, cuyo cargo no se había creado en las fechas en que tuvieron lugar, sino que se hicieron por y ante la corte de Ponce, con arreglo á la ley entonces vigente; y en su consecuencia, solo la corte tenía atribuciones para otorgar la escritura de venta ó de adjudicación en pago.   Es cierto que cuando esa escritura se otorgó, ó sea en veinte y ocho de septiembre de mil novecientos cuatro, ya había comenzado á regir el Código de Enjuiciamiento Civil, actualmente vigente, como también la ley creando el cargo de marshal de distrito, definiendo sus deberes y fijando su sueldo por el desempeño de los mismos, y si bien el artículo 259 de dicho Código ordenaba que al venderse propiedades inmuebles el marshal debía dar al comprador un certificado de venta haciendo constar, entre otras cosas, que la propiedad quedaba sujeta al derecho de redención, no encontramos disposición alguna referente al funcionario que debía otorgar el título de

dominio una vez vencido el plazo de redención sin haberse ésta verificado.

La Ley de nueve de marzo de 1905 para reformar los artículos 94, 152, 234, 295 y 302 del Código de Enjuiciamiento Civil y para derogar los artículos 259 á 266 y todos los demás del mismo, en cuanto se refieran á la redención de la propiedad y para otros fines, fué la que en su artículo 5°. establece que en los casos en que se venda, en subasta pública por el marshal ú otro funcionario debidamente autorizado, una propiedad inmueble, en virtud de ejecución ú orden de venta librada por una corte de justicia, deberá dicho marshal ó funcionario otorgar al comprador escritura pública en debida forma de tal propiedad, abonando dicho comprador el importe de tal escritura; pero esa ley de nueve de marzo de mil novecientos cinco no estaba vigente en la fecha en que se otorgó la escritura de adjudicación de que se trata, y por tanto, no podía tener aplicación, como tampoco podía tenerla el artículo 259 del Código de Enjuiciamiento Civil, por la razón de que no habiendo hecho la venta el marshal, no podía expedir el certificado de la misma á que dicho artículo se refiere.

Aun más, con arreglo al procedimiento civil actual, las atribuciones del marshal emanan de la orden de ejecución que se libra por la corte. En cumplimiento de esa orden, el marshal subasta los bienes, los trasmite al mejor postor y otorga el correspondiente título de propiedad; pero no habiendo orden de ejecución al marshal, como no la hubo en el procedimiento sumario que terminó por la escritura de adjudicación de que se trata, carecía de atribuciones el marshal para otorgar dicha escritura, y sólo á la Corte de Distrito de Ponce, en representación de los ejecutados por ministerio de la ley incumbía su otorgamiento.

Dicha escritura, pues, no puede reputarse nula por falta de capacidad legal del juez que la otorgó, y siendo, por tanto, válida, constituye prueba del derecho de dominio que hoy reclaman los demandantes, habiendo sido, por tanto, denegada

con razón en el acto del juicio la moción de la parte demandada para que se declarara por la corte desistida ó abandonada la demanda por no haber presentado el demandante pruebas suficientes para fundar sobre éstas una sentencia.

También ha alegado por primera vez el apelante ante esta Corte Suprema, que la copia de la escritura de adjudicación presentada en el juicio, como título de dominio, no está certificada por el notario que la expidió, requisito necesario, según el artículo 70 de la Ley de Evidencia, para que tenga el valor de un documento público, y que el demandante no probó que se reservara sus derechos cuando el terreno litigioso fué destinado á cementario público, hace más de cinco años, existiendo, por tanto, á favor del demandado, con arreglo al párrafo 37 del artículo 102 de la misma Ley de Evidencia, la presunción de la intención del dueño de dar á dicho terreno el destino expresado.

Esas alegaciones son enteramente nuevas, y bien podríamos desestimarlas, desde luego, por extemporáneas; pero entrando en el examen de ellas, nos basta consignar, en cuanto á la primera, que en la copia presentada, expresó el notario autorizante que concuerda fielmente con la escritura original obrante en su oficio, con cuyas palabras bien puede estimarse probado el registro público del documento de que se trata, según el artículo 70 de la Ley de Evidencia, en relación con el 74; y en cuanto á la segunda, que no habiéndose probado ni alegado siquiera que el terreno que reclama como suyo la parte demandante estuviera destinado á cementerio durante cinco años con el consentimiento del dueño, huelga invocar en el presente caso la presunción que establece el número 37 del artículo 102 de la Ley de Evidencia, siendo, por tanto, una y otra alegación, además de extemporáneas, improcedentes en su fondo.

Por las razones expuestas, entendemos debe confirmarse la sentencia apelada que dictó la Corte de Distrito de Ponce

en trece de abril del corriente año, con las costas del recurso también á cargo de la parte apelante.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Quiñones y Asociados, Figueras, MacLeary y Wolf.